■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HERMAN BENJAMIN FERGUSON and ARTHUR HARRIS, Appellants.— Appeals from two judgments (each as to a respective defendant) of the Supreme Court, Queens County, both rendered October 3, 1968, convicting defendants of conspiracy to commit murder in the first degree, upon a jury verdict, and imposing sentence. Judgments affirmed. Defendants were convicted of conspiracy to murder civil rights leaders Roy Wilkins and Whitney Young, after trial in June of 1968. They claim several bases for reversal, all of which have been unanimously rejected by this court, except for the claim that the Criminal Term should have granted a mistrial and an adjournment of the trial until the fall of 1968 on the ground that the emotional impact of the assassination of Senator Robert Kennedy

during the trial rendered it impossible for defendants to get a fair trial. We reject this claim and, in this respect, we disagree with the minority. There is no disagreement on the part of the members of this court as to the admissibility of the testimony that Robert Kennedy's name was included on the assassination list. Roy Wilkins and Whitney Young were but two of other intended victims of an over-all conspiracy to eliminate certain civil rights leaders, black or white, whose activities and philosophies posed a threat to the success of the black revolution. The evidence of the broader conspiracy bore on the motivation of the specific conspiracy with which defendants were charged and for which they were on trial. Accordingly, the names of others including President Lyndon B. Johnson and Senator Robert Kennedy came to light as prospective victims. On all the facts and circumstances, we are of the opinion that the trial court properly rejected defendants' requests for a mistrial and an adjournment of trial. The identity of Robert Kennedy's assassin was immediately known and widely publicized. Defendants were on trial at the time of the occurrence and far removed from the scene. It is understandably not urged by defendants that they were in any manner identifiable with the Kennedy assassination despite the happenstance that his name was included on a list of their prospective victims; and nothing has been offered to show that the carefully selected jurors, all sworn to perform their duty, made such a connection on their own. The trial court's forceful charge clearly instructed the jurors that they were not to be so inclined. Moreover, in view of the admissibility of the testimony that Robert Kennedy's name was included on the list, such testimony, if it were to militate against defendants, would continue to do so irrespective of when defendants were tried. The only prejudicial significance which could be deemed attributable to the assassination and the only significance which the minority attribute thereto is its emotional impact on the triers of the fact. As such, it can only be evaluated for its emotional impact as an assassination per se irrespective of whether the victim was Robert Kennedy or any other public figure of similar stature. The incident in this context was not more significant than the never-to-be-forgotten assassinations of President John F. Kennedy and Dr. Martin Luther King. Nor, in view of the constant ceremonial public reminders of the latter assassinations can it be persuasively urged that those assassinations were so far removed from that of Robert Kennedy, whose philosophies were closely identifiable with his late brother and Dr. King, as to attenuate the jury's continued awareness of the assassinations of the President and Dr. King and render them significantly less prejudicial than the Robert Kennedy assassination. It is our view that the emotional impact of the Robert Kennedy assassination, being closer in point of time, could not be readily disregarded and should not, in any event, be underestimated. Nevertheless, it is incumbent upon the court, in the interests of justice, on behalf of the People as well as the defendants, to make a realistic appraisal of the emotional impact of these incidents of violence on jurors. To attribute to the Robert Kennedy assassination such significance as to justify a conclusion that a mistrial should have been declared, when, at the posture at which the incident became fatal and the emotional impact became significant, the People's case, which included the testimony of an "unmasked" undercover agent, had already been substantially completed, is to strain the interests of justice to a filament, in disregard of the People's right to its share of justice. We hold (1) that no substantial constructive purpose would have been served in declaring a mistrial and adjourning the trial until the fall; (2) that it is unrealistic to say that the trial court should have anticipated that at an adjourned date any substantial attenuation of the emotional impact of the Robert Kennedy assassination could have been achieved; (3) that to effect any significant constructive adjournment in this

as well as in similar cases would require waiting for a period when there will be a hiatus of violence, which would be tantamount to declaring a moratorium on all prosecutions for similar acts of violence; (4) that the suspension of the trial over the three-day weekend following the Senator's death accomplished as much in the way of reducing any possible prejudice as a more prolonged adjournment would have accomplished; and (5) that to reason that an act of violence such as the Robert Kennedy assassination was of such prejudicial emotional significance as to render a fair trial at bar impossible is, if carried to a logical conclusion, to justify an indefinite postponement and would result in the frustration of the effective administration of justice because subsequent widely publicized acts of violence could then render the perpetrators of prior similar acts practically immune from prosecution. It is therefore in this totality of circumstances that we resist reversal under the guise of serving the interests of justice. We conclude that the situation at bar calls for an affirmance of the judgments of conviction. Christ, Acting P. J., Munder and Kleinfeld, JJ., concur; Benjamin and Martuscello, JJ., dissent and vote to reverse the judgments and grant a new trial, with the following memorandum: Defendants, allegedly leaders of a black revolutionary movement known as RAM, were convicted of conspiracy to murder two black civil rights leaders (Roy Wilkins and Whitney Young) because they considered them "Uncle Toms" who had sold out their fellow blacks to the white society and because they (defendants) believed that these murders would facilitate the success of the black revolution. The People likewise intended to show, and did show, over defendants' objection, that defendants intended to kill Robert Kennedy, as well as Roy Wilkins and Whitney Young. The trial started on June 3, 1968. During the early morning of June 5, Senator Robert Kennedy was shot by Sirhan Sirhan. At first it was not known whether the wound was fatal. When court convened on June 5, defense counsel moved for a mistrial and an adjournment of the trial until the fall, on the ground that the shooting of Senator Kennedy had created an emotional atmosphere in which it was impossible for the jurors to accord defendants a fair trial on the indictment charging them with conspiracy to assassinate prominent men. The motion was denied and the trial continued. Later that day proof was adduced, over defense counsel's objection, that a prior list of people to be assassinated by RAM included Senator Robert Kennedy. Again, defense counsel moved for a mistrial, stating that Senator Kennedy was then close to death and the emotional atmosphere resulting from his shooting was so prejudicial to defendants that they could not possibly get a fair trial; and again the motion was denied. Senator Kennedy died on the next day (Thursday, June 6) before court convened. At the opening of court, the Trial Justice announced that at the close of the day the court would recess until Monday morning. While he did not refer to the Kennedy assassination, it was by then common knowledge that all courts and schools were scheduled to be closed on Friday out of respect for Senator Kennedy's memory; that his body would lie in state at St. Patrick's Cathedral on Friday before being taken to Arlington National Cemetery on Saturday to be buried near his late brother, President John F. Kennedy; and that Sunday had been set by the Government as an official day of mourning. And, of course, everyone knew that these events would be the subject of massive television, radio and press coverage throughout the entire weekend. When court recessed until Monday morning defense counsel once again moved for a mistrial, pointing out that under these conditions it would be impossible for the jurors to remain objective, despite the court's instructions that they were not to watch television or read newspapers and despite their own most conscientious efforts to wipe from their minds the tragic assassination of Senator Kennedy. And once again the court refused to grant

a mistrial. In our opinion it was seriously prejudicial error not to grant a mistrial and not to adjourn this trial until the fall. The shocking emotional impact of Senator Kennedy's assassination, the dramatic funeral service and the public mourning for his tragic end — all occurring while defendants were on trial for conspiring to assassinate two other prominent public figures — inevitably must have prejudiced the jurors against these defendants, particularly since Senator Kennedy himself was one of those originally marked for assassination by them. No man could have resisted these emotional pressures and remained objective, no matter how sincere his wish to do so. No human jury could have given these defendants an impartial trial in the midst of these events. And under our system of law that is what these defendants were entitled to, whether they be guilty or innocent. An adjournment of several months would have allowed passions to cool and emotions to subside. By then the assassination of Senator Kennedy would have become history, not a tragedy still on the boards and unfinished. By then it would have been possible to accord these defendants a fair and impartial trial, uninfluenced by the still-aroused, deep-seated passions and emotions that inevitably pervaded the trial these defendants had. We vote to reverse and grant a new trial.