**Herman Benjamin FERGUSON, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, Defendant.**

**No. 89 Civ. 5071 (RPP).**

United States District Court, S.D. New York.

Sept. 13, 1991.

Center for Constitutional Rights, New York City by Joan P. Gibbs, for plaintiff Herman Ferguson.

Otto G. Obermaier, U.S. Atty. S.D.N.Y., New York City by Steven I. Froot, Asst. U.S. Atty., for defendant F.B.I.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

The Federal Bureau of Investigation ("FBI") moves pursuant to Rules 59 and 62 of the Federal Rules of Civil Procedure for reconsideration, clarification and a stay of this Court's prior Opinion and Order dated April 22, 1991 (familiarity with which is presumed). The FBI had moved for partial summary judgment as to the sufficiency of its production of documents dated 1963–70 which contained references to plaintiff Herman Ferguson ("Ferguson"), which the FBI had produced in heavily redacted form based on its interpretation of the statutory exemptions contained in the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552

(as amended). After reviewing *in camera* an unredacted sample consisting of 89 documents, the Court denied the FBI's motion for partial summary judgment, partially granted the plaintiff's motion for reprocessing as specified in that Opinion, denied plaintiff's motions for another *Vaughn* index and discovery, ordered the FBI to produce certain documents *in camera* to the Court as specified in that Opinion and Order, and ordered it to release to plaintiff Herman Ferguson certain information from the 89 documents reviewed *in camera* by the Court. *Ferguson v. FBI*, 762 F.Supp. 1082 (S.D.N.Y.1991).

In response to the Court's order, the FBI submits a second *in camera* declaration of Special Agent Joseph P. Smith and a public declaration of Special Agent Smith, both dated May 6, 1991, and makes the instant motions.

The Court notes that in its prior opinion, it suggested that the government ascertain whether the Attorney General would consider applying in this case the Department of Justice policy enunciated in 1974, cited with approval in the legislative history, of waiving legal FOIA exemptions as to historic investigatory records over fifteen years old. 762 F.Supp. at 1085. In response, the government submits the statement by FBI Special Agent Smith,[1] who states that he has "consulted with personnel in the Office of Information and Privacy, to whom the Attorney General has delegated authority concerning Freedom of Information Act issues pursuant to 28 C.F.R. 0.23a, concerning a waiver of the exemptions ..." Special Agent Smith states that "Richard L. Huff, Co–Director of the Office of Information and Privacy has advised me that he has determined that there is insufficient historical interest in these records to warrant discretionary disclosure under 28 C.F.R. 50.8." Second

---

1. Special Agent Smith is the FBI employee who has supervised the processing of the FOIA request at issue here and found by the Court to be flawed. According to his prior declaration, dated September 24, 1990, he was also a field investigative agent from 1969 to 1979. Declaration of Joseph P. Smith, September 24, 1990, ¶ 2, n. 1. From 1971 to 1979 he held that position in the New York Field Office of the FBI, whose files and actions are many of those at issue here.

Declaration of Joseph P. Smith ("Second Smith Decl."), May 6, 1991, ¶ 3.

28 C.F.R. 50.8, promulgated in 1984, represents a slight change of the 1974 policy of the Department of Justice. It provides as follows:

(a) The Department of Justice recognizes that portions of certain investigatory files compiled by the Department for law enforcement purposes, although of significant historical interest, are nevertheless exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552, as amended. In responding to requests pursuant to that Act, it is the general policy of the Department that such files that are more than fifteen years old and that are no longer substantially related to current law enforcement activities will be processed for disclosure subject to deletions to the minimum extent necessary to protect law enforcement efficiency, personal privacy, or other legitimate interests that would be implicated by the disclosure of such files.

28 C.F.R. 50.8.[2] 28 C.F.R. 50.8 states that, with respect to investigatory files over fifteen years old and no longer substantially related to current law enforcement activities, the general policy of the Department is that they "will be processed for disclosure subject to deletions to the minimum extent necessary to protect law enforcement efficiency, personal privacy, or other legitimate interests that would be implicated" by disclosure. The records in the files received here are well over 15 years old and not claimed to be substantially related to current law enforcement activities. The policy as enunciated is not stated to be conditional on the making of a prior deter-

mination that the records are of "sufficient" historical interest. Indeed, not only is the finding of "insufficient historical interest" not a ground for refusing to apply the stated governmental policy, it is impossible to reconcile with this Court's ruling in December, 1990:

The Court recognizes, in addition, that twenty-two years have elapsed since the conviction of plaintiff for the crime for which he is currently in prison; that the FBI internal document cited by the Court in its Opinion of October 24, 1989 describes non-investigative techniques involving prominent black nationalist figures in the 1960's which are contrary to our constitutional heritage; that plaintiff was a prominent black nationalist figure in those years; and that among African-American citizens in particular, as well as others, there is a strong public interest in determining whether any such non-investigative techniques were utilized in connection with the prosecution of plaintiff.

*Ferguson v. FBI*, 752 F.Supp. 634, 637 (S.D.N.Y.1990). The compelling public interest in governmental accountability and the urgent need for public confidence in the justice of criminal convictions and the fairness of the judicial system (all at issue here), particularly among African-American citizens, are beyond dispute and would be well served by as full a release as possible of the records compiled on Ferguson. The "significant historical interest" of these documents is evident in the many works of a historical nature which have been published on the subject of the FBI's role in American history and politics of the latter part of this century,[3] especially the

---

**2.** 28 C.F.R. 0.23a states:

(a) There is established, in the Office of Legal Policy, the Office of Information and Privacy, which, under the general supervision and direction of the Assistant Attorney General, Office of Legal Policy, shall:

(1) Act on behalf of the Attorney General on Freedom of Information Act and Privacy Act appeals under §§ 16.8, 16.48, 16.50(d) and 16.52, respectively, under the supervision of the Assistant Attorney General, Office of Legal Policy, except that: (i) In the case of a denial of a request by the Assistant Attorney General, Office of Legal Policy, the Attorney General or his

designee shall act on the appeal, and (ii) a denial of a request by the Attorney General shall constitute the final action of the Department on that request.

**3.** *E.g.,* Curt Gentry, *J. Edgar Hoover: The Man and the Secrets* (1991); Athan Theoharis (Ed.), *From the Secret Files of J. Edgar Hoover* (1991); Kenneth O'Reilly, *Racial Matters: The FBI's Secret File on Black America* (1989); Taylor Branch, *Parting the Waters: America in the King Years* (1988); Richard G. Powers, *Secrecy and Power: The Life of J. Edgar Hoover* (1987); David J. Garrow, *Bearing the*

FBI's response to political dissent, and in the voluminous *Final Report of the Senate's Select Committee to Study Governmental Operations With Respect to Intelligence Activities*, Senate Report No. 94–755, 94th Cong., 2d Sess. (1976) (the "Church Committee Report"), cited in *Lamont v. Dep't of Justice*, 475 F.Supp. 761, 765 n. 5 (S.D.N.Y.1979). That Ferguson, a man in his seventies, is still alive and seeks these documents in order collaterally to attack his conviction of criminal charges does not lessen their historical significance, just as his sole personal need for disclosure may not be relevant to whether or not there is a public interest in disclosure. *Cf. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 1480–81, 103 L.Ed.2d 774 (1989); *United States Dep't of Justice v. Julian*, 486 U.S. 1, 14, 108 S.Ct. 1606, 1614, 100 L.Ed.2d 1 (1988); *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

The United States Attorney is ordered to determine from the Assistant Attorney General in charge of the Office of Legal Policy, or from the acting Attorney General, whether the Attorney General will exercise his discretion to waive, in whole or in part, application of the exemptions to the documents here at issue, in view of their age, their lack of relationship to current law enforcement activities, and the Court's earlier findings that they are of substantial public interest.

In connection with this determination, the Court brings to the government's attention the decisions of the Appellate Division, Second Department, which upheld plaintiff's 1968 conviction by a panel divided 3 to 2 and the decision of the New York Court of Appeals which upheld plaintiff's conviction in a 4 to 3 decision. The government's attention is called also to:

(1) the following portion of the Appellate Division's dissenting opinion:

Later that day proof was adduced, over defense counsel's objection, that a prior list of people to be assassinated by RAM included Senator Robert Kennedy.... In our opinion it was seriously prejudicial error not to grant a mistrial and not to adjourn this trial until the fall. The shocking emotional impact of Senator Kennedy's assassination, the dramatic funeral service and the public mourning for his tragic end—all occurring while defendants were on trial for conspiring to assassinate two other prominent public figures—inevitably must have prejudiced the jurors against these defendants, *particularly since Senator Kennedy himself was one of those originally marked for assassination by them....*

*People v. Ferguson*, 32 A.D.2d 936, 938–39, 302 N.Y.S.2d 950, 953–54 (N.Y.A.D.2d Dep't 1969) (Benjamin and Martuscello, JJ., dissenting) (emphasis added).

2) the following language in the Appellate Division's majority opinion:

There is no disagreement on the part of the members of this court as to the admissibility of the testimony that Robert Kennedy's name was included on the assassination list. The evidence of the broader conspiracy bore on the motivation of the specific conspiracy with which defendants were charged ...

*People v. Ferguson, supra,* 32 A.D.2d at 937, 302 N.Y.S.2d at 951, *aff'd, People v. Ferguson,* 25 N.Y.2d 728, 307 N.Y.S.2d 228, 255 N.E.2d 567 (1969).

3) the unredacted news articles in Exhibit 2 to the First Superneau Decl., No. 3 of 8, Serials 23–37 of HQ 100–443173, and Exhibit 3, No. 4 of 16, Serials 211–300 of NY 100–153704, containing reports that it was Howlette's trial testimony that Senator Kennedy and President Johnson were assassination targets of Ferguson.

4) the redacted first paragraph of page 31 of Document 49 of the *in camera* production; and

5) the principles of justice expressed in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as well as *Giglio v. United States,* 405 U.S. 150, 153–

Cross: Martin Luther King, Jr. and the Southern Christian Leadership Conference *(1986).*

54, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972), *Napue v. Illinois,* 360 U.S. 264, 269, 271, 79 S.Ct. 1173, 1177, 1178, 3 L.Ed.2d 1217 (1959) and *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *see also, People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), *cert. denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961).

The United States Attorney is ordered to comply with the court order of April 22, 1991 by submitting a declaration by the Assistant Attorney General for the Office of Legal Policy or from the acting Attorney General of their position on the application of this policy to the files at issue here. If the records are deemed of "insufficient historical interest," the United States Attorney is ordered to state the basis for that determination and its applicability to 28 C.F.R. 50.8. The United States Attorney is ordered to submit this declaration to the Court on this matter within ten days after the date of entry of this Opinion and Order.

Finally, the Court notes that the government has not complied with the Court's prior order to produce to the Court, *in camera,* unredacted copies of the documents previously produced to the Court only in redacted form and to compile certain other information to assist the Court's *in camera* review of those documents. The motion for a stay, which has not been denied or granted prior to the issuance of this opinion, was not addressed to that aspect of the Court's order. The FOIA itself provides for *in camera* review by the District Court and the government cannot claim irreparable harm to itself by providing the materials necessary for the Court to carry out its statutory duty. The government is ordered to produce the unredacted documents for *in camera* review by September 20, 1991. 5 U.S.C. § 552(a)(4)(G).

## DISCUSSION

### I. Motion for Clarification

The motion for clarification is denied. The FBI requests that the Court clarify its prior Opinion and Order "to provide that no documents or information submitted by the FBI to the Court *in camera* will be released by the Court directly or indirectly to plaintiff, but rather in the event a release of documents or portions of documents is ordered by this Court, the documents submitted *in camera* will be returned to the FBI for release by the FBI in accordance with such order." Defendant's Memorandum In Support of Motion for Reconsideration, at 2.

The Opinion and Order of April 22, 1991 is clear as to that the Court will review *in camera* the documents to be produced in unredacted form to the Court. No suggestion of further Court action was made in the opinion of April 22, 1991.

 The FBI complains that the Court has revealed that certain redacted records consist entirely of a copy of the superseded state court indictments against Ferguson upon which he was arraigned and copies of pamphlets in support of Ferguson which apparently were handed out at public rallies, claiming that these too are "information" supplied by confidential sources and so exempt from disclosure, regardless of the fact that they are either public records or documents which it is not argued would reveal the identity of a source. The purpose and language of the statute do not allow for the government's interpretation nor has any binding judicial precedent been cited to the Court to support this complaint of the FBI. In addition, the legislative history of the FOIA also indicates that the Senate decided that an amendment of the statute was unnecessary to provide expressly that an agency is not obligated to copy "public records" such as "court records" and "newspaper clippings," which are in its files, but could choose either to identify their presence to a requester or to supply copies of them. *Hearings on the Freedom of Information Reform Act,* Subcommittee on the Constitution, Senate Committee on the Judiciary, S.Hrg. No. 98–699, 98th Cong., 2d Sess., at 53–54 (1983). The content of the hearings indicates that court records and other public documents found in the files are not subject to the

limited exemptions provided by the FOIA,[4] which are to be narrowly construed, resolving doubts in favor of disclosure. *Julian v. United States Dep't of Justice*, 806 F.2d 1411 (9th Cir.1986), *aff'd sub nom. United States Dep't of Justice v. Julian*, 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988); *see also, Donovan v. FBI*, 806 F.2d 55, 58 (2d Cir.1986).

Furthermore, a copy of the superseding indictment, which incorporated the earlier, superseded charges, was released in this proceeding to plaintiff in its entirety. Exhibit 2 to the First Superneau Declaration ("First Superneau Decl."), Number 2 of 8, in HQ 100–443173. Some of the pamphlets mentioned by the Court in its prior opinion were also previously released in their entirety to plaintiff, such as pamphlets attached to Documents 66 and 87 of the *in camera* production; similar public flyers urging attendance at support rallies or contributions to a defense fund were also previously released in their entirety.[5] The fact that those documents have been previously released creates doubt as to whether they or other pamphlets should be withheld when they are found in other files. FOIA requires the Court to resolve doubts in light of the strong public policy favoring disclosure. Accordingly, the FBI's complaints about the ordered disclosure are found to lack adequate foundation. Indeed, the reluctance to disclose such documents which are clearly non-exempt and are reasonably segregable raises the question of whether the FBI is making a good faith effort to comply with the FOIA.

## II. Motion for Reconsideration

■ The motion for reconsideration of defendant's motion for partial summary judgment is denied. The Court notes that its prior decision denied the FBI's motion for partial summary judgment, on the ground that issues of fact existed as to whether the exemptions were properly applied. The government has not raised any controlling decision or factual matter which the Court overlooked in its opinion of April 22, 1991. Local Civil Rule 3(j). The FBI has still failed to meet its burden of showing that each of the many records produced in redacted form was compiled for law enforcement purposes. "As amended, Exemption 7 requires the Government to demonstrate that a record is 'compiled for law enforcement purposes' *and* that disclosure would effectuate one or more of the six specified harms.... These changes require consideration of the nature of each particular document as to which exemption was claimed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 110 S.Ct. 471, 477, 107 L.Ed.2d 462 (1989) (emphasis in original).[6] The Court's reasoning has been ade-

---

4. The Court has looked to the legislative history of the FOIA for guidance, as have most courts considering these issues, because the language of the exemption provisions is not unambiguous when read in isolation and alone it provides little guidance to a court reviewing *de novo* an agency's claims of exemption. *See, e.g., NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224–36, 98 S.Ct. 2311, 2318–24, 57 L.Ed.2d 159 (1978). *Cf. John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 110 S.Ct. 471, 476–77, 107 L.Ed.2d 462 (1989).

5. In its *Vaughn* affidavit to the Court (the Second Declaration of Regina Superneau, February 16, 1990, hereinafter "Second Superneau Decl."), the FBI originally declared that it had used (b)(7)(D)–3 (information furnished by a confidential source), for example (applied to withhold some of the pamphlets), to redact information received from third parties for the specific reason that releasing such information might reveal their identities. Second Superneau Decl., ¶¶ 65–66, 68. The same danger, disclosure of identity, was given as the reason for withholding pamphlets under (b)(7)(D)–2 (disclosure of reports of a law enforcement agency). *Id.*, ¶ 63. The FBI seeks now, after the Court has pointed out that releasing public records and pamphlets handed out on the street cannot possibly reveal the identity of the source, to change its declaration to claim it is not necessary to show any danger of disclosure.

6. The Court also questioned whether the FBI's position was that the files on Ferguson were opened pursuant to a criminal investigation or a lawful national security intelligence investigation, and the government has not responded. The government has cited only criminal statutes and has not cited any authority which would allow the Court to determine whether the records were compiled as part of a "lawful national security intelligence investigation" under the FOIA. The Court notes that the phrase was strictly limited in the Joint Statement of the Committee on Conference to refer only to "military security, national defense or foreign policy

quately stated in its prior opinion.[7] The Court also ordered the release of specific records contained in the limited number of documents reviewed *in camera.* This opinion will revisit that portion of the prior opinion.

### III. The NYCPD and Edward Howlette

■ The government argues that the Court erred in ordering the disclosure of records and information not otherwise exempted, which were supplied by the New York City Police Department or Edward Howlette, relevant to the testimony elicited at plaintiff's trial.[8] It asserts that exemption (b)(7)(D) applies to all information supplied by a confidential source, whatever the content or risk of source identification, and that the subsequent disclosure of a source's identity and information in no way affects the exemption. The FBI has taken the position that neither Howlette nor any electronic surveillance or mail covers were themselves the *FBI's* sources.[9] Rather, the FBI argues, if the *FBI's* source was the "state or local law enforcement agency" itself, passing on information it got from Howlette or non-human sources, the FBI is entitled to apply exemption (b)(7)(D) to all information supplied by the channelling source (the local agency), in spite of Howlette's lengthy testimony and the fact that the government concedes technical devices are not protected sources under FOIA.

If the "protected" source of the surveillance information was the New York City Police Department ("NYCPD") itself, as seems likely from the FBI's arguments, the government has not carried its burden of convincing the Court that exemption (b)(7)(D) properly applies, as discussed in the prior opinion and below.

... [and] positive intelligence-gathering activities, counter-intelligence activities, and background security investigations by governmental units which have authority to conduct such functions." Source Book: Legislative History, Texts, and Other Documents, Freedom of Information Act and Amendments of 1974 (P.L. 93–502), Joint Committee Print, March, 1975 ("1975 Source Book"), 230. The exemption is limited to those national security investigations which are lawful. Because the FBI has not explained how its activities meet any part of this definition and has cited only criminal statutes, the Court finds that the FBI has taken the position that all records were compiled as part of legitimate criminal investigations.

7. The Court directed the government to submit contemporary proof that the FBI in fact had a "justifiable suspicion" that federal law was in danger of being violated and thus had a legitimate law enforcement purpose for the compilation of the records for use in its investigations and for the continued monitoring. The Court questioned whether the Smith Act and the Internal Security Act did, as claimed, supply the actual purposes of these investigations in light of the strict limitations which had been placed on the enforcement of those statutes by contemporary Supreme Court decisions and in light of evidence to the contrary contained in the FBI records. 762 F.Supp. at 1090–91, 1091 n. 13. *See, e.g.,* unredacted FBI letter to the Secret Service, January 28, 1968, attached to Document 13 of the short *in camera* production (no allegation of threats of bodily harm against government officials).

As of 1976, no prosecutions under the Smith Act had been initiated after 1957, the year of the decision in *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). *Intelligence Activities and the Rights of Americans* (the "Church Committee Report"), Senate Report No. 94–755, Book II at 48 (94th Cong.2d Sess., April 26, 1976). The Department of Justice moratorium on Smith Act prosecutions, lasting at least nineteen years, covers the entire period of the FBI's interest in Ferguson documented in the records from 1963–70 and it undercuts any claim by the FBI today that the monitoring of Ferguson's activities in that period was conducted in the good faith expectation that the FBI would find Ferguson had violated or was in violation of this statute. *See Lamont v. Dep't of Justice,* 475 F.Supp. 761, 774–75 (S.D.N.Y.1979). The Court is not aware that any Smith Act prosecutions have been initiated in the additional fifteen years since 1976.

8. The government does not appear to be resisting the Court's order to disclose the information provided by Lt. Col. Smith and Lt. Col. Smithson.

9. The government having failed to comply with the Court's order of April 22, 1991, to supply it *in camera* with code numbers together with source identification, 762 F.Supp. at 1094, is unable to verify these statements by the FBI at this time, but for purposes of this opinion, the assertions will be accepted as accurate. The government agrees that a "technical surveillance device such as a mail cover or electronic surveillance cannot constitute a 'confidential source' for purposes of Exemption 7(D)." Defendant's Memorandum in Support of Motion for Clarification at 5.

Here, Howlette testified at plaintiff's trial that he was an undercover New York City policeman who was assigned to the NYCPD's Bureau of Special Services ("BOSS"). The role of BOSS in the surveillance of Ferguson and RAM has already been widely disclosed to plaintiff and the public [10] and was apparently testified to by Howlette and others at Ferguson's trial in 1968. 762 F.Supp. at 1098. On November 7, 1990, pursuant to the New York State Freedom of Information Law, N.Y. Public Officers L. §§ 84–90, the NYCPD released to Ferguson all the records in its possession relating to Ferguson, RAM and the Jamaica Rifle and Pistol Club, among others. Declaration of Joan P. Gibbs, May 15, 1991 ("Gibbs Decl."), ¶ 2.[11] The documents are, with one or two minor exceptions, completely unredacted and disclose throughout the names of individual police officers and their supervisors as well as the content of surveilling officers' reports, names of third party sources and the information provided by the latter, and names of third parties also under surveillance. This undisputed assertion is deemed to constitute a waiver by the NYCPD of the confidentiality of that information.

The government has failed to explain to the Court why, in view of the NYCPD's own release of its files, the FBI continues to claim that the NYCPD and BOSS still qualify as confidential sources whose identities and information, unless otherwise exempted, are exempt from disclosure under exemption (b)(7)(C) or (b)(7)(D) of the FOIA.[12]

As to Edward Howlette, the Court respectfully does not agree with the authorities relied on by the government, *Irons v. FBI*, 880 F.2d 1446 (1st Cir.1989), and *Kimberlin v. Dep't of Treasury*, 774 F.2d 204

(7th Cir.1985). As was noted in *Bretti v. Dep't of Justice*, 1990 WL 84366, 1990 U.S. LEXIS 7514 (N.D.N.Y.1990), the law in the Second Circuit is that "the proper interpretation of the term 'confidential source' includes an informant who is promised or reasonably expects confidentiality *unless and until the agency needs to call him as a witness at trial.*" *United Technologies Corp. v. NLRB*, 777 F.2d 90, 94 (2d Cir. 1985) (emphasis added). "The privilege belongs to the beneficiary of the promise of confidentiality and continues until he or she waives it." *Id.* at 96. In fact, based on *United Technologies*, the Court finds the *Irons* dissent, 880 F.2d at 1457, as it interprets FOIA, more persuasive than the majority opinion. Furthermore, the facts presented in *Irons* and *Kimberlin* are distinguishable from the present matter. None of the cases cited by the government is analogous to the facts of this situation. Here, the confidential source is claimed to have been a local law enforcement agency, but that agency has waived its right to confidentiality by releasing its own reports. This case involves an individual who testified at great length to the same events on which he reported, which reports are now sought under the FOIA by the accused against whom he testified. None of the cases cited involved that kind of situation. At most, those cases hold that where confidential information is independently revealed, as a result of independent revelations, or the requester comes to know that certain information has become public through someone other than the confidential source, then the mere fact of that revelation or the requester's independent knowledge does not deprive the confidential source of the protection of exemption

**10.** Peter Zimroth, *Perversions of Justice: The Prosecution and Acquittal of the Panther 21* (Viking, 1974). *See also, Handschu v. Special Services Division*, 605 F.Supp. 1384, 1396–99 (S.D.N.Y.1985) (Haight, J.) (re BOSS surveillance of community activists); *People v. Collier*, 85 Misc.2d 529, 376 N.Y.S.2d 954, 960–61 (N.Y.Sup.Ct.1975) (same).

**11.** Sampled contents of those files are attached to the Gibbs Decl. as Exhibits 1–50.

**12.** "The (b)(7)(C)–4 exemption was asserted to withhold the identities of cooperating non-Federal law enforcement officers.... when it was determined that their names were not known to the plaintiff or to the general public. This exemption was used in conjunction with (b)(7)(D)–4." Second Superneau Decl., ¶ 52. Clearly, with respect to the NYCPD's released files, those names are now known to the plaintiff.

(b)(7)(C) or (D).[13] *Irons, supra,* at 1448; *Kimberlin, supra,* at 205–09. Here too, the plaintiff was the subject of Howlette's testimony and the NYCPD and BOSS records. The Court's order of April 22, 1991 requires the FBI only to disclose to plaintiff information of which Howlette was the original source, limited to the same investigation of Ferguson as to which Howlette testified at Ferguson's trial: i.e., Howlette's infiltration of RAM and JRPC, what went on at the meetings, what were Ferguson's and Howlette's roles, the alleged violent plans and action of Ferguson and Harris, and the alleged conspiracy to murder Young and Wilkins. Similarly, the Court is ordering the FBI to produce to plaintiff unredacted copies of records and information, of which the NYCPD or BOSS was the source, concerning Ferguson's involvement in these matters. 762 F.Supp. at 1096–98.

The Court's limited order of disclosure in its April 22, 1991 opinion is consistent with the articulation of the Attorney General's 1975 Memorandum for implementation of the 1974 Amendments.

> Once it is determined that a request pertains to 'investigatory records compiled for law enforcement purposes,' *the next question is whether release of the material would involve one of the six types of harm specified in clauses (A) through (F) of amended exemption 7. If not, the material must be released despite its character as an investigatory record compiled for law enforcement purposes,* and (generally speaking) even when the requester is currently involved in civil or criminal proceedings with the Government.[14]

1975 Source Book, *supra,* Appendix 5, at 516–17 (emphasis added). The government has failed to show how the limited order of release of records and information received from the NYCPD and thus of Howlette would cause any harm, under the special factual circumstances of this case.

The disclosure of this information, more than two decades after the events at issue, will not seriously damage the FBI's ability to gather information from non-federal law enforcement agencies. The Court has strictly limited its order of disclosure to a few specific documents, which record information from a source, the NYCPD, which, it is undisputed, has waived confidentiality by release of its own records. The government has failed to articulate any reason why non-federal law enforcement agencies would be deterred from sharing information with the FBI as a result of disclosure under these factual circumstances. On the record before the Court, the mandate of FOIA would not be served by a failure of this Court to order to limited disclosure contained in its previous opinion.

## IV. Assertions of (b)(7)(C) Exemptions

█ In response to the Court's concern that (b)(7)(C) has been applied, in many cases, concurrently with (b)(7)(D), without adequate explanation, the FBI responds that it is FBI policy to do so. This response is insufficient to meet the statute's requirements and does not provide the Court with enough information to carry out its *in camera* review in a responsible manner. The FBI's syllogism on this motion, rejected by the Court in its prior Opinion and Order, runs as follows: 1) all FBI records are compiled for law enforcement purposes; 2) all FBI investigations are ei-

---

13. Even *Irons* involved "the plaintiffs' claim that they are entitled to more than what the Smith Act trials *in fact* brought to light." 880 F.2d at 1448 (emphasis in original).

14. The six are: 1) interference with enforcement proceedings; 2) deprivation of a fair trial; 3) unwarranted invasion of personal privacy; 4) disclosure of the identity of a confidential source; 5) disclosure of investigative techniques and procedures; and 6) endangering the life or safety of law enforcement personnel. 5 U.S.C. § 552(b)(7). The exemption for *information*

supplied by a confidential source was added to address Senate and Presidential concerns that even pieces of seemingly trivial information could be analysed to reveal the source's identity. 1975 Source Book, *supra,* at 371. This does not alter the fact that the actual harm sought to be avoided is the disclosure of identity itself. *Cf. NLRB v. Robbins, supra.* That reading was reaffirmed by the Supreme Court after the 1986 amendments to exemption 7 in *John Doe Agency, supra,* 110 S.Ct. at 477, with reference to "six specified harms." *Id.*

ther criminal investigations or lawful national security intelligence investigations; 3) every individual, law enforcement agency or other institution who gives information to the FBI is therefore both a witness or other third party with a privacy interest, and a confidential source, under exemption 7 of the FOIA; 4) therefore all information in FBI investigatory files, supplied to the FBI by all individuals, law enforcement agencies or institutions is exempt from disclosure under 7(C) and 7(D) together. Accepting these arguments would exempt all but the most trivial FBI records from application of the FOIA, which is clearly against the purpose and wording of the statute.[15] It would also render meaningless the distinction, described in the *Vaughn* index given to the Court, between "third parties interviewed," and "informants within the common meaning of the term and not merely conscientious or cooperative citizens," contrasted in the Second Superneau Decl., ¶¶ 53 and 56, and ¶ 63. The NYCPD's release of its unredacted files also eliminates the basis for the FBI's application of certain (b)(7)(C) exemptions, which it stated it applied when the information was "not known to the plaintiff or to the general public." Second Superneau Decl., ¶¶ 51–52. The Court adheres to its earlier holding as to (b)(7)(C) exemptions.

## V. Dead Sources

■ In its prior opinion, the Court directed the FBI to ascertain whether records related to sources who are now dead had been redacted and to inform the Court as to which persons were dead or if the FBI was unable to determine that fact. The FBI has not done so and complains that it has no obligation to do so, since, it argues, the fact of a source's death would not affect application of the b(7) exemptions. With regard to records redacted under (b)(7)(C), that exemption requires a balancing of the source's privacy interest against the interest in disclosure. A dead person's privacy interest may survive his or her death, but it is necessarily greatly diminished by death and must be balanced against the plaintiff's interest and the public interest in disclosure. Upon the FBI's compliance with the Court's order, the Court will be in a position to weigh any decedent's privacy interests against the interests favoring disclosure.

## VI. Motion for Stay

■ The FBI moves for a stay of the Court's prior Order and Opinion to the extent that the order requires disclosure of documents to plaintiff, pending appeal. To obtain a stay, defendant must show a likelihood of success on the merits, irreparable injury to it absent a stay, public interest in favor of a stay, and no significant injury to the plaintiff. Defendant has shown none of the above. Its legal and factual arguments continue to be deficient, in spite of the Court having given it several opportunities in the past two years to justify its position, with specific reference to areas of concern. While it is true that disclosure irrevocably changes the status quo, the FBI has not shown that there is any harm to it in the disclosure of the few records, out of thousands (most of which are more than two decades old), which it was ordered to disclose. Many of the people involved are dead; none of the officials whose policies dictated the surveillance at issue are still in those positions. The public interest falls more heavily on the side of disclosure, in light of Ferguson's continued claim of innocence despite his conviction, the history of the FBI during this period, and the compelling public interest in assuring the fairness of the judicial process and the ultimate accountability of government agencies as mandated by the FOIA. *John Doe Agency, supra.* Further delay in com-

---

**15.** Judge Sarokin recently noted in making a similar ruling:

[T]he government presents the following syllogism: (1) all information conveyed to the FBI during the course of a criminal investigation is furnished pursuant to an express or implied promise of confidentiality; (2) based upon such express or implied promise neither the source not the content of the information

received from such source may be disclosed; (3) therefore, all information gathered by the FBI from any source during a criminal investigation is exempt from disclosure under exemption 7(D) of the FOIA.... To find as the government contends would totally eviscerate the statute and its policy and purpose. *Landano v. United States Dep't of Justice,* 758 F.Supp. 1021, 1022 (D.N.J.1991).

pliance with the Court's orders is unwarranted, since the plaintiff continues to be incarcerated for a conviction which he hopes to challenge on the basis of released FBI records. The government having failed to persuade the Court that a stay is justified, the FBI's motion for a stay of the order to disclose pending appeal is denied. *Landano v. United States Dep't of Justice,* 758 F.Supp. 1021, 1027 (D.N.J.1991).

## CONCLUSION

In light of the FBI's repeated inability to carry its burden under the FOIA as to certain exemptions and its failure to establish a legitimate contemporary law enforcement purpose for the compilation of records which it deleted under exemption (b)(7) in documents dated 1963–1970 and located in the files classified or cross-referenced under the numbers 62, 100, 105 and 157, and its failure to show by contemporary documents that the investigations at issue were either criminal investigations or lawful national security intelligence investigations under (b)(7)(D), the Court adheres to its earlier opinion denying the FBI partial summary judgment. For the reasons discussed as to the application of the (b)(7)(C) and (b)(7)(D) exemptions, the Court adheres to its earlier ruling with regard to records for which the New York City Police Department or Edward Howlette or any non-human device or technique was the source, which appear in the 89 documents reviewed *in camera*. The FBI is also ordered to make the *in camera* submissions to the Court which were previously ordered, 762 F.Supp. at 1094, and have not been produced, within ten days of the entry of this opinion and order. 5 U.S.C. § 552(a)(4)(G).

The motion for a stay of the Court's Order and Opinion of April 22, 1991 and of the above order is denied. No stay is granted as to the order to make *in camera* submissions to this Court and no such motion will be entertained.

IT IS SO ORDERED.